# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

Vicki D. Short,

               Plaintiff,

    v.

Nancy A. Berryhill,
Acting Commissioner of
Social Security,

               Defendant.

No. 3:18-cv-01928

(Judge Mannion)

---

## MEMORANDUM

### I. Procedural Background.

We consider here the appeal of Plaintiff Vicki D. Short ("Plaintiff") from a decision of the Social Security Administration ("SSA") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's claim was denied initially at the administrative level on February 18, 2015. She then requested a hearing before an ALJ and received such a hearing on December 19, 2016. ALJ Lawrence J. Neary issued a Notice of Decision on April 13, 2017 that was unfavorable to Plaintiff. Plaintiff then requested review by the Appeals Council. The Appeals Council denied Plaintiff's request for review on May 15, 2017. The Appeals Council's denial constitutes a "final decision" by the SSA and confirms jurisdiction on this Court pursuant to 42 U.S.C. §405 (g).

## II. Testimony before the ALJ.

At the hearing of December 19, 2016, Plaintiff testified. Plaintiff was represented at the hearing by Attorney Stephen Hogg. Also testifying was Sheryl Bustin, a vocational expert. The testimony may be summarized as follows:

### a. Plaintiff's Testimony.

Plaintiff's was fifty-five years of age on the date of her hearing. She stated that she was single and living with her mother in New Cumberland, Pennsylvania. She had no income of any kind but was receiving medical assistance. She had a driver's license and indicated that she drove only to run errands for her mother. She indicated that she had graduated from high school and earned an associate degree in accounting/business management. (R. 39-40).

Plaintiff acknowledged that she had worked for two employers since August 1, 2014, her alleged onset date. She worked for six weeks in a warehouse and worked for approximately four weeks assembling display boxes. She left both jobs of her own volition. However, she was having difficulty with her supervisor at the warehouse job and stated that she likely would have been fired if she had not quit. She left the job where she

assembled boxes because she was having difficulty remembering the process the job required. (R. 40-41).

In the distant past she worked as a distribution manager in 2002. In that position she was involved in the hiring process, training, inventory control, and occasionally had to work on the line herself. She stressed that she performed as a distribution manager "before any of this was diagnosed." (R. at 42).

Plaintiff explained that she cannot work because she flies into rages and cannot accept direction well from her supervisors. She had an alcohol problem years earlier but went through a rehabilitation program and has been "clean" since 2007. She was on probation at the time of her hearing for violating a "no contact order" that arose from an altercation with a friend. She explained that she knew she should not have contacted the person she was forbidden to communicate with but analogized that situation to those where she had said things to supervisors that she should not have said. She essentially testified that she has no filter and "like I puke it out." (R. 44-45).

She has been in counseling for eight years with Dr. Wehlman. He has tried to treat her behavior problems with various medications but has not been able to find the right "cocktail". Some of the medications had interacted badly with the result that she became very tired or would lose her focus. She

stated that she can pay attention for about five minutes before "my mind just wanders off." (R. 46-47).

Plaintiff indicated that if she was working she would be stressed because she takes care of her terminally ill mother who requires constant care. The entire task of carrying for her mother has fallen on her since her aunt died. She described other places she worked for short intervals (as a personal care worker for an older man and as cleaning woman in a motel) since assuming her mother's care. She was fired from both jobs for an inability to keep her mouth shut and for clashing with her supervisors. (R. 46-51).

Plaintiff stated that she is experiencing side effects from her medications that include tingling in her fingers, constant fatigue, nightmares, and restless leg syndrome. She also has difficulty sleeping and awakens several times each night. When she awakens her mind races and it takes some time to get back to sleep. She arises at 4:30 a.m., has her morning coffee, prepares her mother's breakfast and organizes her pills. After her mother eats, she gets her back to bed and begins cleaning, doing laundry, and running errands. When she returns she helps her mother shower, makes her lunch, and again gets her back to bed. Afterward she begins making

dinner. After they eat dinner she and her mother watch television together for about one hour and then both go to bed by eight o'clock p.m. (R. 52-53).

Plaintiff testified that she does not go to church, perform any activities outside the home, go out to eat, or have any hobbies. She does not have a computer but does access the internet on her cell phone. She keeps this to a minimum because it makes her phone bill more expensive. When she goes to the grocery store or bank she finds it very stressful because the people she encounters tend to make mistakes. When such things occur she will sometimes have a mild panic attack or even "an outrageous, ridiculous hissy fit." She stated that she had taken Ativan before coming to her hearing to ease her anxiety. She added that, although she is constantly tired, she cannot sleep during the day because her mother must be watched constantly. (R. 54-56).

**b. Testimony of Sheryl Bustin.**

Sheryl Bustin, a vocational expert, testified without objection from Plaintiff's attorney. Ms. Bustin characterized Plaintiff's past work as either at light or medium exertional level. The ALJ asked Ms. Bustin a hypothetical question in which she was asked to assume: "a hypothetical individual same age and education as the claimant with the past jobs that you described. And let's further assume this individual is limited to - - and this will be hypothetical

#1. No exertional limitations. But limited to simple, routine tasks. Only occasional changes in the work setting. And only occasional interaction with supervisors and co-workers." (R. at 57-58).

The ALJ then asked whether the hypothetical individual would be able to perform any of Plaintiff's past relevant work. Ms. Bustin responded in the negative because all Plaintiff's past occupations required more than occasional interaction with other people. Ms. Bustin did testify, however, that there were jobs available in significant numbers in the national economy that the hypothetical individual could perform including: "laundry laborer", "machine feeder", and "cleaner/housekeeper". (R. at 59).

When the ALJ changed the hypothetical question to specify that the hypothetical person could have no interaction with the public, co-workers, or supervisors, no changes in the work setting, and an inability to respond appropriately to usual work situations, Ms. Bustin stated that those additional limitations would render the hypothetical individual unemployable. Ms. Bustin indicated that her testimony was consistent with the Dictionary of Occupational Titles. (R. at 60).

Under questioning by Plaintiff's attorney, Ms. Bustin indicated further that even if Plaintiff was capable of responding appropriately to contact with co-workers, the public, and her supervisors for one third of a workday, she

would yet remain unemployable. She indicated that more than that degree of appropriate interaction with supervisors would be necessary in any occupation. (R. 60-61).

### III. Relevant Medical Testimony.

#### a. Henry Wehman, MD.

Dr. Wehman a board certified psychiatrist, treated Plaintiff as early as 2007. He has been treating Plaintiff on a regular basis since 2012. During the relevant time period the record indicates that he saw Plaintiff on thirteen occasions. On each of these occasions Dr. Wehman assessed that: Plaintiff's speech was "relevant, productive, and goal-directed"; that her stream of thought and content of thought were normal; that she had no suicidal ideation or hallucinations; and that her cognitive function was generally intact. While Plaintiff's affect was normal on some occasions, it was intense or constricted during seven sessions. (R. 277, 278, 279, 357, 358, 359, and 360)[1]. While Plaintiff's mood was normal on some occasions it was dysthymic during eight of Dr. Wehman's sessions with the Plaintiff. (R. 277,

---

[1] Restricted or constricted affect describes a mild restriction in the range or intensity of display of feelings. www.encyclopedia.com/medicine/psychology/affect.

279, 355, 356, 357, 358, 359, and 360). [2] Dr. Wehman noted sporadic progress but also indicated that Plaintiff had regressed since her previous visit on February 9, 2014; October 25, 2014; May 14, 2015; and June 9, 2015. (R. 275, 277, 279, and 359).

Throughout Dr. Wehman's treatment of the Plaintiff he prescribed various psychotropic medications including Adderall, Klonopin, Lorazepam, Latuda, and Ambien.[3] He noted on several occasions that Plaintiff was adherent to her medical regimen. On June 9, 2015, after having treated Plaintiff on nine occasions, Dr. Wehman executed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). Dr. Wehman assessed that Plaintiff had: mild impairment of her ability to carry out simple instructions; moderate impairment of her ability to understand and remember simple instructions; marked impairment in making judgments on work-related decisions, understanding and remembering complex instructions, carrying

---

[2] "Persistent depressive disorder, also called dysthymia, is a continuous long-term form of depression. You may lose interest in normal daily activities, feel hopeless, lack productivity and have low self-esteem and an overall feeling of inadequacy. These feelings last for years and they significantly interfere with your relationships, school, work and daily activities." www.mayoclinic.org/diseases-conditions/persistent-depressivedisorder(dysthymia).

[3] A psychotropic drug is any drug capable of affecting the mind, emotions, and behavior. www.medicinenet.com.

out complex instructions, making judgments on complex work-related decisions, interacting appropriately with the public, interacting appropriately with coworkers, and responding appropriately to situations and changes in a routine work setting; and extreme impairment in interacting appropriately with supervisors. Dr. Wehman also indicated that his assessment was supported by Plaintiff's "history" and that the impairments he identified had been present since August 1, 2014. (R. 385-387).

### b. Karen Rafferty, Psy.D.

Karen Rafferty, a clinical psychologist, performed a psychiatric evaluation of Plaintiff at the request of the Bureau of Disability Determination on June 9, 2015. Dr. Rafferty took Plaintiff's background information and medical history. Dr. Rafferty then conducted a mental status examination that resulted in her impression that Plaintiff was cooperative with adequate social skills. Plaintiff revealed that she had a history of drug and alcohol abuse and that she had twice been incarcerated (for a total of eight years) for drug offenses. Plaintiff's thought process was "coherent and goal directed"; her affect and mood were "neutral"; her attention and concentration were "grossly intact"; her recent and remote memory were "grossly intact"; her cognitive functioning appeared within "the average range"; her insight was "fair"; and her judgment was "poor, based on her

criminal history." Dr. Rafferty recommended that Plaintiff "should consider seeking psychotherapy as an adjunct to her medication management." Dr. Rafferty assessed Plaintiff's prognosis as "guarded" and indicated that she would be incapable of managing her own funds. (R. 290-294).

Dr. Rafferty completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) regarding Plaintiff on the same date that she performed her consultative examination. Dr. Rafferty assessed that Plaintiff was mildly impaired in terms of her abilities to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions; moderately impaired in terms of her ability to understand and remember complex instructions, carry out complex instructions, interact appropriately with the public, and respond appropriately to usual work situations and changes in a routine work setting; and markedly impaired in terms of her ability to make judgments on complex work-related decisions, interact appropriately with co-workers, and interact appropriately with supervisors. Dr. Rafferty indicated that her assessment was based upon Plaintiff's "anxiety and mood lability". [4] (R. 295-297).

---

[4] "Mood lability is an emotional response that is irregular or out of proportion to the situation at hand. It is associated with severe mood swings, intense reactions, and dramatic changes in opinions and feelings." www.verywellmind.com.

### c. Karen Weitzner, Ph.D.

Dr. Weitzner completed a Disability Determination Explanation regarding Plaintiff's claim on February 17, 2015. Dr. Weitzner had no personal contact with the Plaintiff. Her assessment of Plaintiff's mental status was based upon Dr. Rafferty's Medical Source Statement, information supplied by Plaintiff on her applications and Dr. Wehman's reports through December 2014. Dr. Weitzner indicated that Plaintiff had no restriction in carry out activities of daily living and only moderate difficulty in social functioning and maintenance of concentration, persistence, and pace. Dr. Weitzner also assessed that Plaintiff: had no significant limitation in carrying out very short and simple instructions; the ability to perform activities within a schedule or be punctual within customary tolerance; the ability to sustain an ordinary routine without special supervision; the ability to complete simple tasks; the ability to interact appropriately with the general public; and the ability to get along with co-workers without distracting them or exhibiting behavioral extremes. Plaintiff was described as moderately limited in terms of: the ability to carry out detailed instructions; the ability to maintain concentration for extended periods; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to maintain

socially appropriate behavior; and the ability to respond appropriately to changes in the work setting. (R. 63-69).

## IV. ALJ. Decision.

The ALJ's decision was unfavorable to the Plaintiff and included the following findings of fact**:**

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since August 1, 2014, the alleged onset date.
>
> 3. The claimant has the following severe impairments: bipolar disorder, anxiety disorder, attention deficit hyperactivity disorder, and history of substance abuse disorder.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the Code of Federal Regulations.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual

functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is limited to simple, routine tasks with only occasional changes in the work setting and only occasional interaction with supervisors and co-workers.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on July 13, 1961 and was fifty three years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the medical-vocational rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10. Considering the claimants age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

## V. Disability Determination Process.

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[5]   It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2)

_____

[5]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §423(d)(2)(A).

whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 CFR §§404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he is unable to engage in his past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at the fifth step of the process when the ALJ found there are jobs that exist in the national economy that Plaintiff is able to perform.  (Doc. 10-2 at 28).

## VI.   Standard of Review.

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. §405(g); *Hartranft v. Apfel*, 181 F.3d

358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla". It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)*.* The United States Court of Appeals for the Third Circuit further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–-particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion. *See Cotter*, 642 F.2d at 706 ("Substantial evidence can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

710 F.2d at 114.

This guidance makes clear that it is necessary for the Secretary to analyze all evidence. If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the]

decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, our Court of Appeals clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have

reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing*

*Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986);

42 U.S.C. §405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . .").

"However, even if the Secretary's factual findings are supported by

substantial evidence, [a court] may review whether the Secretary, in making

his findings, applied the correct legal standards to the facts presented."

*Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation

omitted). Where the ALJ's decision is explained in sufficient detail to allow

meaningful judicial review and the decision is supported by substantial

evidence, a claimed error may be deemed harmless. *See*, *e.g.*, *Albury v.*

*Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir. 2004) (not

precedential) (citing *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000)

("[O]ur primary concern has always been the ability to conduct meaningful

judicial review."). Finally, an ALJ's decision can only be reviewed by a court

based on the evidence that was before the ALJ at the time he or she made

his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## VII. Discussion

### A. General Considerations

At the outset of this Court's review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, I note that the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits. *See Dobrowolsky*, 606 F.2d at 406. Social Security proceedings are not strictly adversarial; rather the Social Security Administration provides an applicant with assistance to prove his claim. *Id.* "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act."

*Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974). As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed." *Id.*

### B. Plaintiff's Allegations of Error.

Plaintiff asserts that the ALJ erred in three ways that require reversal or remand of this case. We shall consider these in the order presented.

## I.  Whether the ALJ erred in failing to apply the treating physician rule to Dr. Wehman's opinion?

Plaintiff asserts that the ALJ inappropriately subordinated the opinion of a treating psychiatrist, Dr. Wehman, to that of a state agency psychologist, Dr. Weitzner, without providing an adequate rationale for doing so. While the Court cannot conclude that the evidentiary state of the record justifies a reversal of the Agency's decision, we do find that remand is necessary due to the ALJ's failure to provide an appropriate explanation for preferring Dr. Weitzner's opinion.

Under applicable regulations and the law of the Third Circuit, a treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight. See, e.g., *Fargnoli v. Halter,* 247 F.3d 34, 43 (3d. Cir. 2001). Sometimes called the "treating physician rule", the principle is codified at 20 C.F.R. 416.927 (c)(2), and is widely accepted in the Third Circuit. *Mason v. Shalala,* 994 F.2d 1058 (3d. Cir. 1993); see also *Dorf v. Brown,* 794 F.2d 896 (3d Cir. 1986). The regulation addresses the weight to be given a treating source's opinion: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight." 20 C.F.R. §416.927 (c)(2). The regulations also provide that more weight will generally be given the medical opinion of a medical source who has examined the claimant than a source who has not. 20 C.F.R. §416.927 (c)(1).

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time*." Morales v. Apfel*, 225 F.3d 310, 317 (3d. Cir. 2000) (citations omitted); see also *Brownawell v. Commissioner of Social Security,* 554 F.3d 352, 355 (3d Cir. 2008). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." *Morales,* supra at 317 (citing *Plummer v. Apfel*, 186 F.3d 422, 429) (3d. Cir. 1999).

In cases like the instant case, where a claimant has a mental impairment like "… an affective or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic." *Morales,* supra at 319. *Morales* specifically directs that a treating mental health provider's opinion that [the claimant's] ability is seriously impaired or non-existent in every area related to work shall not be supplanted by an inference gleaned from treatment records reporting on the claimant in an environment absent of the stresses that accompany the work setting." *Id. Morales* also explains that "[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving mental disability." *Id.*

Furthermore, in cases that involve mental health impairments, courts have recognized that a medical source's opinion which relies on subjective complaints should not necessarily be undermined because psychological and psychiatric conditions by nature are largely diagnosed on the basis of a patient's subjective complaints. *Schickel v. Colvin,* 2015 WL 8481964, at *11 (M.D.Ill. December 10, 2015); *Hall v. Astrue,* 882 F. Supp. 2d 732, 740 (D.Del. 2012). The importance of recognizing difficulties in ascertaining the severity of a mental health impairment was discussed at length in *Frye v. Berryhill,* 2017 WL 4387060 (M.D.Pa. October 3, 2017).

Mental impairments such as depression and anxiety…may manifest in symptoms difficult to quantify through objective medical evidence. A lack of objective medical evidence is by itself insufficient to discredit [a] claimant. SSR 96-7p. As noted by other courts in the Third Circuit, impairments such as depression and anxiety "while medically determinable, are difficult to substantiate by objective medical evidence." *Volage v. Astrue,* 2012 WL 4742373 at * 7 (D.N.J. October 1, 2012). "[T]he reports of treating physicians, as well as testimony by the claimant, become even more important in the calculus for making a disability determination" in circumstances involving impairments for which objective medical testing may not demonstrate the existence or severity of an impairment. See *Perl v. Barnhart*, 2005 WL 579879 at * 3 (E.D.Pa. March 10, 2005) (*citing Green-Younger v. Barnhart,* 335 F.3d 99, 108 (2d Cir. 2002). Thus, credibility becomes paramount in making the disability determination without objective medical evidence to refute the findings of a treating source.

Frye, 2017 WL 4387060, at *4.

The importance of subjective complaints related to mental impairments and difficulty quantifying these impairments through objective medical evidence indicates that non-examining source opinions should be carefully considered when an ALJ relies on such an opinion to discount a treating source opinion. Important considerations are the degree to which the non-examining source provides supporting explanations for the opinion and the degree to which the source considers all pertinent evidence, including opinions of treating and examining sources. 20 C.F.R. §416.927 (c)(3); see also *Blum v. Berryhill,* 2017 WL 2463170, at * 7-9 (M.D.Pa. June 7, 2017).

In this case, the non-treating, non-examining psychologist that the ALJ relied on in crafting Plaintiff's RFC had neither the benefit of Dr. Wehman's opinion nor the superior perspective of Dr. Wehman's longitudinal treatment of Plaintiff on thirteen occasions over a period of two years. Despite these infirmities, the ALJ:

> … has accorded great weight to the February 17, 2015
> opinion of the State agency psychological consultant
> finding that the claimant experiences no restriction of
> activities of daily living, moderate difficulties in maintaining

social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation, each of extended duration and that she is able to retain, understand, and complete simple instructions within a community setting…, as it is in accord with the relatively benign clinical signs and findings of record and the rather conservative nature of treatment for a mental health impairment.

(R. at 26).

The ALJ dismisses Dr. Wehman's much more severely limited assessment of Plaintiff's ability to function in the work-setting by stating that it "appears to overstate the claimant's functional limitations/restrictions when viewed in conjunction with the record as a whole, which establishes that the claimant's findings are rather benign and the treatment history is very conservative." (R. at 27). The ALJ's observation that Plaintiff's findings are "benign" and her treatment history is "very conservative" finds no medical support in the record. By the ALJ's own assessment, Plaintiff has severe impairments including bipolar disorder, anxiety disorder, attention deficit hyperactivity disorder, and history of substance abuse disorder. (R. at 20).

In light of these findings, the ALJ's RFC determination in this case constitutes the sort of lay speculation about an expert's medical opinion that is expressly forbidden by *Morales,* supra at 317. Therefore, this case will be remanded for further proceedings to include receipt of a clarifying opinion from Dr. Wehman and/or a report from a consulting/examining psychiatrist. The special nature of mental health impairments recognized in our case law demands no less.

**II.    Whether the ALJ erred by failing to account for all limitations identified in the opinion of the State agency psychologist even though the ALJ gave that opinion "great weight"?**

Plaintiff asserts correctly that the ALJ failed to incorporate all impairments noted by Dr. Weitzner, whose opinion he accorded "great weight" in crafting his RFC determination. Specifically, Plaintiff notes that Dr. Weitzner's conclusions that Plaintiff had moderate limitation in maintaining concentration and attention for extended periods, moderate limitation in the ability to accept instructions and criticism from supervisors, moderate limitation in maintaining socially appropriate behavior and basic standards of neatness and cleanliness, and limited coping skills are not adequately reflected in the ALJ's RFC determination. (Doc. 13 at 19-20). Defendant

responds that an ALJ is not required to adopt all limitations identified by a medical source to which the ALJ assigns "significant weight". *Wilkinson v. Commissioner of Social Security*, 558 F. Appx. 254, 256 (3d Cir. 2014) (Doc. 16 at 17). Even if an ALJ is not required to accept the existence or severity of all limitations identified by a medical expert to which he assigns significant weight, some explanation should be made for why he does not include all such limitations in his RFC determination. Otherwise, impermissible "cherry picking" of medical opinions is invited. See *Dyer v. Colvin,* 2015 WL 3953135 (M.D.Pa. June 29, 2015); see also *Pike v. Colvin,* 2015 WL 1280484 (W.D.N.Y. March 20, 2015). Because the ALJ provides nothing in Plaintiff's RFC to adequately account for her limitation in maintaining concentration, persistence, and pace, a limitation recognized by both Dr. Weitzner and Dr. Wehman as well as the ALJ himself (R. at 21), the ALJ's RFC determination is, at least in part, clearly unsupported by the requisite substantial evidence.[6] The Court's primary concern is always to assure that the Agency's decisions

---

[6] The ALJ's RFC determination was derived from a hypothetical question to the vocational expert that alluded to difficulty with concentration, persistence, and pace only by confining Plaintiff to the performance of simple, repetitive tasks. As such, the hypothetical question was categorically deficient because confining a claimant to simple, repetitive tasks, without more, does not adequately account for difficulties with concentration, persistence, or pace. *Mascio v. Colvin,* 780 F.3d 632, 638 (4th Cir. 2015). See also *Chrupcala v. Heckler,* 829 F. 2d 1269,1276 (3d Cir. 1987).

are supported by the requisite substantial evidence, that degree of evidence that a reasonable mind might accept as adequate to support a conclusion. Richardson and Cotter, supra. Therefore, because the Court agrees that the ALJ failed to account for all credibly established limitations of record, it will be necessary to conduct further proceedings in which a vocational expert can respond to a hypothetical question that includes all Plaintiff's limitations.

**III. Whether the ALJ erred in failing to provide an appropriate explanation for finding Plaintiff and her mother to be only partially credible?**

The ALJ provides the familiar recitation that "… the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the statements of the claimant and Sandra Bannon, the claimant's mother …, concerning the intensity, persistence and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 24). Presumably, despite the ALJ's failure to provide a specific citation to this "other evidence in the record", the ALJ refers to the observations of Dr. Weitzner regarding her assessment of Plaintiff's capacity to work. Given the previously discussed unreliability of Dr. Weitzner's

conclusions due to her lack of contact with the Plaintiff and her limited exposure to all the treating psychiatrist's treatment records and opinions, the Court finds that the ALJ's decision to attach limited credibility to Plaintiff's testimony and that of her mother on the basis of Dr. Weitzner's opinion is inadequately explained here. [7] As indicated in Section VII above, the medical record in this case must be expanded before a ruling can be made. Once that is accomplished, the testimony of Plaintiff and her mother can be assessed against all medical evidence of record.

---

[7] The Court does not intend to convey that a State agency consulting physician must examine a claimant before his assessment of Plaintiff's capacity to work can constitute "substantial evidence". However, in the context of a mental health case, where diagnoses and limitations are largely determined by observing a Plaintiff's affect and listening to his speech, it will be a rare thing that a consulting psychologist's opinion can trump that of a long time treating psychiatrist.

**VIII**.  **Conclusion:**

   For the reasons identified in the foregoing Memorandum, this case is remanded to the Secretary for further development of the record and additional proceedings if necessary.


                                        *s/ Malachy E. Mannion*
                                        Malachy E. Mannion
                                        United States District Judge

Dated: May 29, 2019
18-1928-01